**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **LEONARDO ANTONIO PEREZ,** § | |
| § | |
| *Petitioner*, § | |
| **v.** § | |
| § | |
| § | |
| **TODD BLANCHE,** *in his official capacity* § | |
| *as* Acting United States Attorney General; § | |
| **MARKWAYNE MULLIN,** *in his official* § | **EP-26-CV-00631-DCG** |
| *capacity as* Secretary of Homeland Security; § | |
| and **MARY DE ANDA-YBARRA,** *in her* § | |
| *official capacity as* El Paso Acting Field § | |
| Office Director for Detention and Removal, § | |
| U.S. Immigration and Customs Enforcement, § | |
| § | |
| *Respondents*. § | |

**ORDER TEMPORARILY RESTRAINING RESPONDENTS**
**FROM REMOVING PETITIONER AND SETTING HEARING**

Petitioner Leonardo Antonio Perez ("Petitioner") filed a "Motion for Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction" (ECF No. 5).[1] For the following reasons, the Court **GRANTS** the Motion **IN PART** and orders Respondents to temporarily refrain from transferring Petitioner from this district or removing him from the United States in accordance with the directives below.

---

[1] *See* Mot. TRO, ECF No. 5, at 1.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

## I.    Background

### A.    Deferred Action for Childhood Arrivals

Petitioner is a citizen of Guatemala.[2] He entered the United States without inspection as a child,[3] then received protection under the Deferred Action for Childhood Arrivals ("DACA") program in 2012.[4] The Government has continuously renewed Petitioner's DACA status since then.[5] His most recent renewal is set to expire on February 18, 2027.[6] As far as the record reveals, neither the Government nor an intervening event has revoked Petitioner's DACA protections.[7]

### B.    Petition for Writ of Habeas Corpus

On January 12, 2026, Immigration and Customs Enforcement ("ICE") detained Petitioner in Minnesota and transferred him to Camp East Montana in El Paso, Texas.[8] Two weeks later, the Immigration Court reinitiated Petitioner's removal proceedings, which had been closed since September 13, 2013.[9] Petitioner then filed a "Petition for Writ of Habeas Corpus" (ECF No. 1),

---

[2] Pet., ECF No. 1, at 4.

[3] *Id.* at 1.

[4] Mot. TRO at 3; *see also id.* ("[Petitioner's] removal proceedings were administratively closed on September 13, 2013.").

*See also* 8 C.F.R. § 236.21(c)(3) (explaining how "a DACA recipient is considered 'lawfully present'" in the United States while they remain in deferred action status).

[5] Mot. TRO at 3.

[6] *Id.*; Resp. at 4.

[7] *See, e.g.*, Resp. at 4 (the Government's admission that "Petitioner's current DACA status is current until February 2027.").

[8] Pet. at 6.

[9] Mot. TRO at 3.

in which he claims that Respondents are detaining him in violation of the Fifth Amendment and the Administrative Procedure Act ("APA").[10] On June 10, 2026, an Immigration Judge ("IJ") ordered Petitioner removed to Guatemala.[11] Petitioner waived his appeal of that order.[12]

###### C.    Motion for Temporary Restraining Order ("TRO")

Petitioner seeks preliminary relief "pending a final decision in his habeas corpus proceedings."[13] He argues that Respondents are preparing to remove him imminently, even though he "cannot [lawfully] be removed" while he remains an active DACA recipient.[14] Petitioner thus requests either "a temporary restraining order or preliminary injunction," which would (1) prevent Respondents from removing Petitioner during the pendency of his habeas proceedings; and (2) ultimately release him from custody.[15]

---

[10] Pet. at 17–20.

[11] Removal Order, ECF No. 5-1, at 10.

[12] Mot. TRO at 3.

[13] *Id.* at 1.

[14] *Id.* at 2.

*See infra* notes 38–40 (discussing those requirements in depth).

[15] Mot. TRO at 4, 11.

## II.      Discussion

### A.      Jurisdiction

The Court must first consider whether it has subject matter jurisdiction to grant the relief

Petitioner requests. In relevant part, 8 U.S.C. § 1252(g) provides that:

> no court shall have jurisdiction to hear any cause or claim by or on
> behalf of any alien *arising from* the decision or action by
> the Attorney General to commence proceedings, adjudicate cases,
> or *execute removal orders* against any alien under this chapter.[16]

The Supreme Court has adopted a "narrow reading" of 8 U.S.C. § 1252(g).[17]  As the

Supreme Court explained in *Reno v. American-Arab Anti-Discrimination Committee*, that

provision "was directed against a particular evil: attempts to impose judicial constraints upon

*prosecutorial discretion*."[18] The Fifth Circuit likewise emphasized in *Texas v. United States* that

§ 1252(g) "is not a sort of 'zipper' clause that says 'no judicial review in deportation cases unless

this section provides judicial review.'"[19]

This Court cannot disturb discretionary decision-making by the Executive Branch, and it

is careful not to diminish "the deference owed to the Executive Branch in the conduct of foreign

affairs."[20] But following *Reno*, courts generally agree that § 1252(g) does not preclude

---

[16] 8 U.S.C. § 1252(g) (emphases added).

[17] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).

[18] *Id.* at 485 n.9 (emphasis added); *see also id.* at 487 (characterizing 8 U.S.C. § 1252(g) as a "discretion-protecting provision").

[19] *Texas v. United States*, 787 F.3d 733, 755 (5th Cir. 2015); *accord Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret [8 U.S.C. § 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General.").

[20] *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025).

jurisdiction over purely legal questions.[21] Those include whether the Government is authorized to remove an alien under a given set of circumstances.[22]

Whether the Government may remove Petitioner without revoking his DACA status is a purely legal issue, meaning that 8 U.S.C. § 1252(g) does not strip the Court of jurisdiction to decide it.[23] Seeing no other authorities that preclude the Court's review, the Court concludes that it has jurisdiction to consider the Motion.

---

[21] *See, e.g.*, *Bowrin v. I.N.S.*, 194 F.3d 483, 485 (4th Cir. 1999) (determining that 8 U.S.C. § 1252(g) "do[es] not preclude federal court review of habeas corpus petitions raising questions of pure law"); *Jama v. I.N.S.*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd*, 543 U.S. 335 (2005) ("[W]e have no reason to assume that Congress intended to preclude the district court's habeas review of a pure question of law . . . ."); *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) ("We have jurisdiction to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority.'" (citing cases)); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [8 U.S.C. § 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions.").

*See also, e.g.*, *Texas*, 787 F.3d at 755–56 ("Nor does the government's broad and exclusive authority over immigration policy mean that review is implicitly barred. The INA has numerous specific jurisdiction-stripping provisions that would be rendered superfluous by application of an implied, overarching principle prohibiting review.").

[22] *See, e.g.*, *Jama*, 329 F.3d at 632 (concluding that 8 U.S.C. § 1252(g) did not preclude review of "the Attorney General's construction of a statute" or whether a statute authorized removal under the circumstances); *Siahaan v. Madrigal*, Civil No. PWG-20-02618, 2020 WL 5893638, at *5 (D. Md. Oct. 5, 2020) (determining that 8 U.S.C. § 1252(g) does not preclude courts from reviewing "the purely legal questions of whether . . . removal under the[ ] circumstances violates [applicable] statutory and constitutional provisions").

[23] *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 515 (D. Md. 2025).

In *Abrego Garcia v. Noem*, the Government removed an alien (Abrego Garcia) without a final removal order. *Id.* at 519. After determining that it retained jurisdiction, the district court ordered his return. Thereafter, the Government applied to the Supreme Court to stay the district court's order. *See* Application for Stay, *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (No. 24A), 2025 WL 1038907. Although the parties briefed the jurisdictional issue, *see, e.g.*, *id.* at 17–20, the Supreme Court did not explicitly pass on what effect (if any) 8 U.S.C. § 1252(g) had on Petitioner's arguments. *See Abrego Garcia*, 145 S. Ct. at 1018. The Supreme Court did, however, uphold the district court's order to "facilitate" Abrego Garcia's return. *Id.*

This Court recognizes that it cannot infer, from the mere fact that the Supreme Court reached the merits of that issue, that the Supreme Court implicitly determined in *Abrego Garcia* that the district court had jurisdiction to enter that order. *See, e.g.*, *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144

### B.        Temporary Restraining Order

Under Federal Rule of Civil Procedure 65, a TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction."[24] To prevail, the movant must prove that:

(1)        he is likely to succeed on the merits;

(2)        he is likely to suffer irreparable harm in the absence of preliminary relief;

(3)        the balance of equities tips in his favor; and

(4)        that a TRO is in the public interest.[25]

A TRO is "extraordinary relief and rarely issued."[26] In those rare cases, "every restraining order must state the reasons *why it issued*; state its *terms* specifically; and describe in reasonable detail—and not by referring to the complaint or other document—*the act or acts restrained or required*."[27]

---

(2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed."). Still, the fact that the Supreme Court did not vacate the district court's order for want of jurisdiction—despite the issue being fully briefed and directly before the Court—gives this Court additional reassurance that it has jurisdiction to order the Government to temporarily restrain Petitioner's removal.

[24] *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (citation modified); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (establishing elements for obtaining a preliminary injunction).

As this Court has previously stated, a TRO can "preserve the status quo until the court can conduct a preliminary-injunction hearing," and in turn, a preliminary injunction can "preserve the status quo until the court can resolve a case on its merits." *Zawu Roberts v. De Anda-Ybarra*,  3:26-CV-00377, 2026 WL 1459725, at *7 (W.D. Tex. May 22, 2026) (Guaderrama, J.).

[25] *See Winter*, 555 U.S. at 20.

[26] *E.g.*, *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999).

[27] FED. R. CIV. P. 65(d)(1) (emphases added).

Thus, the Court will consider the merits of Petitioner's first request (*i.e.*, a TRO staying transfer and removal). The Court cannot grant Petitioner's second request (*i.e.*, a preliminary injunction releasing him from custody), because "a court cannot render [the] ultimate relief sought in a habeas petition—releasing a detainee—in the form of a preliminary injunction or TRO."[28]

### 1.    Likelihood of Success

First, Petitioner must demonstrate a substantial likelihood of success on the merits.[29] Where "there are multiple claims in suit, it is only necessary to demonstrate a substantial likelihood of success on the merits for at least one of them."[30]

The lingering question is whether the Court should consider "the merits" of (1) the claims raised in the initial Petition (challenging *detention*) or (2) the claims raised in the instant Motion (challenging *removal*). Confronted with the same issue, some district courts have resolved requests to enjoin *removal* by evaluating whether the underlying *detention* claim is substantially

---

[28] *Saechao v. Noem*, No. 3:26-CV-0624, 2026 WL 602783, at *1 (N.D. Tex. Mar. 4, 2026).

*See also, e.g.*, *Ortega v. U.S. Immigr. & Customs Enf't*, No. 6:26-CV-00865, 2026 WL 776600, at *1 (W.D. La. Mar. 18, 2026) (explaining that courts must deny motions for TROs that "seek the same relief" as a pending habeas petition, because, otherwise, the motion for "immediate release would function as a form of accelerated review, circumventing the habeas process" (citation modified)); *Cano Alvarez v. S. La. ICE Processing Ctr.*, No. 26-0696, 2026 WL 660752, at *1 (W.D. La. Mar. 9, 2026) ("The Petitioner's request for immediate release is improper because one cannot skip the line by dressing a habeas petition in TRO clothes.").

*Cf.* Pet. at 20–21 (requesting, in part, that "Respondents release Petitioner" or "provide a bond hearing").

[29] *See City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018).

[30] *See Santiago v. Noem*, No. 3:25-CV-361-KC, 2025 WL 2606118, at *2 n.1 (W.D. Tex. Sept. 9, 2025) (citation modified).

likely to succeed on its merits.[31] As another district court has observed, however, "removal—not detention—is the matter for which [the petitioner] seeks a stay."[32] This Court is similarly persuaded that the relevant claim should match the requested remedy. Thus, the Court will consider whether Petitioner has a substantial likelihood of success on his claim that his deferred action status, which remains in effect, prevents Respondents from removing him from the United States.[33]

The DACA program is not "a passive non-enforcement policy," but rather "a program for conferring affirmative immigration relief."[34] Thus, "[a] core benefit of DACA is that it allows recipients to live, study, and work in the United States without fear of arrest or deportation."[35] The program mutually benefits the Government, which does not have the "available resources" to simultaneously pursue removal in every case.[36] DACA thus "permit[s] the Secretary to focus enforcement on higher priority targets."[37]

---

[31] *See, e.g.*, *Espinoza-Sorto v. Agudelo*, No. 1:25-CV-23201-GAYLES, 2025 WL 3012786, at *6 (S.D. Fla. Oct. 28, 2025); *Molina Marquez v. Catletti*, No. CV 26-0390, 2026 WL 372175, at *1 (W.D. La. Feb. 10, 2026); *Zapata v. Hernandez*, No. C26-1214-KKE, 2026 WL 1078055, at *1 (W.D. Wash. Apr. 21, 2026); *Chavez v. Noem*, No. 2:26-CV-00161-RJS, 2026 WL 686782, at *3 (D. Utah Mar. 11, 2026).

[32] *Munoz v. Trump*, No. 5:25-CV-217-BJB, 2026 WL 688123, at *2 (W.D. Ky. Mar. 11, 2026); s*ee also, e.g.*, *Juarez v. Noem*, No. 2:26-CV-00801-DC-CKD (HC), 2026 WL 799976, at *7 (E.D. Cal. Mar. 23, 2026).

[33] *See* Mot. TRO at 2 (arguing that Petitioner "cannot be removed until Respondents comply with the procedural requirements at 8 C.F.R. § 236.23(d)").

[34] *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 18 (2020).

[35] *Santiago*, 2025 WL 2606118, at *11.

[36] 8 C.F.R. § 236.23(c)(1).

[37] *Id.*

Under 8 C.F.R. § 236.23(d), United States Citizenship and Immigration Services ("USCIS") "*may* terminate a grant of Deferred Action for Childhood Arrivals at any time in its discretion."[38] To do so, USCIS must first provide the DACA recipient "a Notice of Intent to Terminate and an opportunity to respond."[39] There are scant exceptions to this rule, but even in those cases, USCIS must "provide the individual with *notice* of the termination."[40]

Nothing in the record suggests that USCIS has revoked Petitioner's DACA status or otherwise provided notice of its termination or an opportunity for Petitioner to respond. Petitioner maintains that he "has not been notified that his approved DACA is being revoked."[41] As of March 11, 2026, Respondents agreed that "Petitioner's current DACA status is current until February 2027."[42] Unless Respondents elect to terminate Petitioner's DACA status and comply with the procedural requirements under 8 C.F.R. § 236.23(d), they may not remove Petitioner while he is protected by DACA—even though he is subject to a final order of removal.[43]

Accordingly, the Court concludes that Petitioner has demonstrated a substantial likelihood of success on his claim that he "cannot be removed until Respondents comply with the

---

[38] 8 C.F.R. § 236.23(d)(1) (emphasis added).

*See also Texas v. United States*, 809 F.3d 134, 148 (5th Cir. 2015), *as revised* (Nov. 25, 2015) ("'Lawful presence' is not an enforceable right to remain in the United States and can be revoked at any time, but that classification nevertheless has significant legal consequences.").

[39] 8 C.F.R. § 236.23(d)(1).

[40] *Id.*

[41] Mot. TRO at 7.

[42] Resp. at 4.

[43] *See supra* notes 38–40 and accompanying text.

procedural requirements at 8 C.F.R. § 236.23(d)."[44] Petitioner has thus met his burden on the

first factor.[45]

## 2.    Substantial Threat of Irreparable Harm

Next, Petitioner must show that he is "likely to suffer irreparable harm in the absence of

preliminary relief."[46] "In general, a harm is irreparable where there is no adequate remedy at law,

such as monetary damages."[47]

Since 2012, Petitioner has routinely satisfied the stringent requirements to obtain DACA

status, which "is not guaranteed to all noncitizens who were brought to the United States as

minor children but instead follows a strict vetting process."[48] Accordingly, he would have

---

[44] *See* Mot. TRO at 2.

Because Petitioner's claim focuses on the lawfulness of removal itself, the Court does not decide whether the Government may lawfully *pursue* removal while Petitioner holds DACA status. The Court notes, however, that other courts have taken up this issue. *See, e.g.*, *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022) ("When [Petitioner] became a DACA recipient, she was granted 'affirmative ... relief' from removal. Although the government was free to terminate that relief, it did not, and [Petitioner's] arrest and detention despite that relief were unauthorized." (quoting *Regents of Univ. of Cal.*, 591 U.S. at 17 (2020))); *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 906 (W.D. Wash. 2025) ("On the merits, established precedent defines deferred action as the Government's decision *not* to proceed with removal."); *Medina v. U.S. Dep't of Homeland Sec.*, 408 F. Supp. 3d 1224, 1228 (W.D. Wash. 2019) ("Being approved for DACA status is essentially a conditional promise from the Government that it will not seek removal for the applicable term.").

[45] *Cf. Espinoza-Sorto v. Agudelo*, 1:25-cv-23201, 2025 WL 3012786, at *6 (S.D. Fla. Oct. 28, 2025) ("The Court finds that Petitioner has a likelihood of success on the merits of his claim that it is unlawful to remove him while he has deferred action status. Indeed, by granting Petitioner deferred action status, Respondents affirmed that they would take no action to remove him while that status was in effect.").

[46] *Winter*, 555 U.S. at 20; *cf. United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (specifying that a movant must show "more than an unfounded fear" (citation and internal quotation marks omitted)).

[47] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

[48] *See Castro v. Raycraft*, No. 1:26-CV-161, 2026 WL 380580, at *3 (W.D. Mich. Feb. 11, 2026).

"justifiably expected that his DACA status would not terminate without notice and the opportunity to respond."[49] Petitioner built his life in accordance with that expectation: he "has resided in Minnesota, where he has been gainfully employed and has been raising two small U.S. citizen children, ages 7 and 9."[50]

Petitioner now argues that Respondents are preparing to "imminently remove" him by: "(1) detaining him in Minnesota and transferring him to a processing facility near the southern border in Texas, (2) demanding that he sign documents agreeing to removal, (3) initiating removal proceedings, and (4) securing a final administrative removal order that can be used to remove him."[51] According to Petitioner's counsel, "an ICE Deportation Officer visited him at the detention center and asked that [he] sign for his removal to Guatemala," but "[he] has refused to sign."[52]

If Respondents remove Petitioner before February 18, 2027, or without lawfully terminating his DACA status, Petitioner will be unable to successfully reapply for the program in the future. Under 8 C.F.R. § 236.22(b)(2), a DACA applicant "must demonstrate that he or she has been residing in the United States *continuously* from June 15, 2007, to the time of filing of the request."[53] Any absence after that date may not be the result of an "order of exclusion,

---

[49] *Santiago*, 2025 WL 2606118, at *2 (quoting *Gamez Lira v. Noem*, No. 25-cv-855, 2025 WL 2581710, at *3 (D.N.M. Sept. 5, 2025)).

[50] *See* Mot. TRO at 2–3.

[51] *Id.* at 2.

[52] Declaration, ECF No. 5-1, at 3.

[53] 8 C.F.R. § 236.22(b)(2) (emphasis added).

deportation, or removal."[54] Thus, Petitioner is correct that if Respondents prematurely remove him from the country, "he will lose the opportunity to remain living and working in this country and will be permanently separated from two U.S. citizen children."[55] In other words, the legal effect of his removal would be irreparable.

The Court thus concludes that Petitioner has met his burden on the second factor.

### 3.    Balance of Hardships and Public Interest

Finally, the third and fourth factors "merge when the Government is the opposing party,"[56] as is true here. Concerning the equities, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"[57] As to the public interest, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of [a TRO]."[58]

While there "is always a public interest in prompt execution of removal orders,"[59] the above-mentioned regulations constrain the Government's ability to execute those orders. Likewise, there is a "public interest in preventing aliens from being wrongfully removed."[60] As to the balance of equities, a TRO would merely commit the Government to its preexisting

---

[54] *Id.* § 236.22(b)(2)(ii).

[55] *See* Mot. TRO at 9.

[56] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[57] *Winter*, 555 U.S. at 24.

[58] *Id.*

[59] *Id.*

[60] *Nken*, 556 U.S. at 436.

obligations under the law. By contrast, if Petitioner is correct that Respondents will "imminently remove" him despite his active DACA status,[61] the effect of withholding a TRO would be dire.[62]

The Court thus concludes that Petitioner has met his burden on the third and fourth factors.

* * *

Having carefully considered each *Winter* factor, the Court finds that preliminary relief is necessary to preserve the status quo. The Court will therefore (1) order Respondents to temporarily refrain from removing Petitioner; and (2) set a hearing to determine whether it should issue a preliminary injunction extending the TRO's prohibition of removal.

### III.   Conclusion

For the reasons stated above, the Court **GRANTS** "Petitioner's Motion for Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction" (ECF No. 5) **IN PART** to the extent the Motion requests a temporary restraining order prohibiting Respondents from removing Petitioner from the United States. The Court **DENIES** "Petitioner's Motion for Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction" (ECF No. 5) in all other respects.

The Court thereby **TEMPORARILY RESTRAINS** Respondents from transferring Petitioner from this District and removing Petitioner from the United States until **Friday, July 10, 2026 at 11:59 PM Mountain Time**.

---

[61] *See* Mot. TRO at 2.

[62] *See supra* Section II.B.2.

The Court will not require Petitioner to provide monetary security for the TRO at this time.[63]

The Court **ORDERS** attorneys for Petitioner and Respondents to **APPEAR** for an **IN-PERSON HEARING** to determine whether a preliminary injunction should issue. The hearing will take place on **Wednesday, July 8, 2026 at 11:00 AM Mountain Time** in **Courtroom Number 322**, on the Third Floor of the **United States Courthouse, 525 Magoffin Avenue, El Paso, Texas**.

The Court **ORDERS** Respondents to produce Petitioner Leonardo Antonio Perez at the hearing.[64] If an interpreter is required, Petitioner's counsel must inform the Court as soon as possible.

The Court **ORDERS** Petitioner and Respondents to prepare to discuss the following, with reference to specific evidence and relevant law, at the upcoming hearing:

1) whether Respondents intend to revoke Petitioner's DACA status;

2) whether Respondents intend to remove Petitioner from the United States before his DACA status expires in February 2027;

---

[63] *See* FED. R. CIV. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (explaining that "the court 'may elect to require no security at all'" (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)).

*See also, e.g.*, *Serrato v. Quinones*, No. 6:26-CV-599-JSS-LHP, 2026 WL 904687, at *5 (M.D. Fla. Apr. 2, 2026) (declining to require alien to provide monetary security for preliminary injunction prohibiting his transfer).

[64] *See* 28 U.S.C. § 2243 ("Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.").

3) whether the Government may lawfully detain a DACA recipient who will not be removable until his DACA status expires or the Government revokes it; *and*

4) whether the Court should issue an injunction prohibiting Respondents from removing Petitioner from the United States.

Absent extraordinary circumstances, the Court will **NOT** consider requests to hold the hearing *via* videoconference or any other remote means.

Although the Court **MAY** consider requests to move the hearing to a different date to accommodate the participants' respective schedules, the Court will **NOT** consider any such request filed after **Wednesday, July 1, 2026**, except in extraordinary and unforeseeable circumstances.

The Court **ORDERS** Respondents to transmit this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.

The Court **DIRECTS** the Clerk of Court to **SUBSTITUTE** the following as Respondents in the above-captioned case:

1) Secretary of the U.S. Department of Homeland Security **Markwayne Mullin** in place of former Secretary Kristi Noem; *and*

2) Acting U.S. Attorney General **Todd Blanche** in place of former Attorney General Pamela Bondi.[65]

Finally, the Court **DIRECTS** the Clerk of Court to serve copies of this Order on all named Respondents.

---

[65] *Compare* Pet. at 1, *with* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name . . . . The court may order substitution at any time . . . .").

**So ORDERED and SIGNED this 29th day of June 2026.**

_____

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**